BINGHAM, administrator, &c. *appellant, vs.* WEIDERWAX and SUTHERLAND, *respondents.*

The covenant of seisin, if the grantor has no title, is broken as soon as the deed is executed, and the grantee's right of action upon such covenant becomes immediately perfect.

Nor is it any defence, either at law or in equity, to such an action, that the premises have been sold and the grantee dispossessed under a mortgage which th grantee assumed to pay, and subject to which he took the conveyance.

In the action upon the covenant of seisin, for the purpose of ascertaining the measure of damages, the true consideration, and the fact that only part of it has been paid, may be shown by parol, although the deed expresses a different consideration, and acknowledges that the whole of it has been paid; and there is therefore no occasion, in such a case, to resort to a court of equity for relief.

It seems, that on the dissolution of a corporation, the title to real estate held by it reverts back to its original grantor and his heirs, unless there is some provision in the charter, or some other statutory provision to avert that consequence.

APPEAL from chancery. Henry Weiderwax and James Sutherland filed their bill in chancery, before the vice chancellor of the third circuit, against Anson Bingham, administrator of the estate of Jacob S. Van Buren, deceased, stating the case in substance as follows:

On the 15th day of January, 1838, the said Jacob S. Van Buren applied to the President, Directors and Company of the Hillsdale and Chatham Turnpike Road, a body politic and corporate, to purchase certain real estate of which that corporation was seized, situated in the town of Schodack, county of Rensselaer. An agreement was thereupon made between the directors of the corporation and Van Buren for the sale of such real estate for the price of $3850, and articles of agreement, dated on that day, were drawn up and executed between the complainant Weiderwax, as secretary of the corporation, of the first part, and Van Buren of the second part, whereby it was provided that the premises should be conveyed to Van Buren on the first day of April then next; and the said Van Buren on his part agreed, in the same articles, to pay for the land the sum of $3800, as follows: he was to assume and pay two mortgages which encumbered the premises, one of $2000 and the other of $1000, and the balance of the purchase money, being $850, he was to pay on the 5th day of May then next.

On the said first day of April, 1838, the complainants and Story Gott, since deceased, were directors of the corporation, and together constituted a majority of such directors; the said Story Gott being also president, and the complainant Weiderwax being secretary. And on that day the complainants and said Gott, with the advice and consent of the other two directors, executed under their hands and seals to said Van Buren a conveyance in fee of the said premises, purporting to be for the consideration of $3850, *and subject to the two mortgages mentioned in the aforesaid articles of agreement,* covenanting in and by such deed that they, the said complainants and Story Gott, *" at the time of the execution of the deed, were the true and lawful owners of the premises in right of the President, Directors and Company of the Hillsdale and Chatham Turn*

*pike Road, and were seized of a perfect estate therein in fee simple, and had lawful right and authority to sell and convey the same in manner aforesaid."* The bill alleged that $3000, being the amount of the two mortgages on the premises, was deducted from the purchase money, and the balance, $850, was paid by Van Buren to the corporation.

The bill further alleged, that at the time of the conveyance the title of the premises was in the corporation, that all parties to the conveyance so understood it, and none of them supposed the title to be in the complainants and Gott, *but being ignorant of the law they supposed that such conveyance would vest the title in the grantee;* that immediately after the execution thereof, said Van Buren went into possession of the premises, and occupied the same personally, or by his tenants, until his death in 1841, and that after his death, the defendant, as administrator upon his estate, received the rents and profits until July 20, 1843.

The bill also alleged that neither Van Buren nor the defendant as such administrator, ever paid the two mortgages on the premises, that the owner of the mortgage of $2000 in March, 1842, commenced proceedings to foreclose the same in chancery, and obtained the usual decree of foreclosure and sale in May, 1843, under which the premises were sold on the 20th of July, 1843, and purchased for the sum of $2620 by one Griffith, who took possession under his purchase. In October, 1844, the defendant, as administrator of the estate of Van Buren, commenced an action at law against the complainants, (Story Gott having previously died,) upon the covenant of seisin contained in the aforesaid conveyance, alleging in his declaration, as a breach, that the complainants and Gott were not seized of an estate in fee in the premises, and had not power and authority to convey the same.

The bill insisted that neither Van Buren, in his lifetime, nor he defendant as administrator, since his death, had sustained any damage or injury by any act or omission of the complainants, that the premises were sold under the said decree of foreclosure, *by reason of the mere neglect of said Van Buren and*

*of the defendant as administrator to pay the mortgage;* also that the deed was by mistake erroneously drawn in this respect, to wit, that it expressed a consideration of $3850, and yet conveyed the premises subject to the said two mortgages of $3000, which would make the consideration appear to be $6850, whereas the true consideration was as before stated only $3850. The facts stated were claimed by the bill to constitute an *equitable* defence to the action at law upon the covenant of seisin, and the prayer was for a perpetual injunction against that or any other suit upon such covenant, and for general relief. The defendant demurred to the bill for want of equity, and upon other grounds more specially stated.

The vice chancellor overruled the demurrer, and his decision was affirmed by the chancellor on appeal. The defendant appealed to this court.

*H. Z. Hayner*, for the appellant.

*J. H. Reynolds*, for the respondents.

JEWETT, C. J. It is assumed by the chancellor that the land was not lost to Van Buren in consequence of a defect of title; but that if the mortgage was properly foreclosed, the title had been lost by his neglect to pay it. I think there is an obvious mistake in that conclusion. The bill concedes that the title to the lands was not conveyed to Van Buren, although he as well as his grantors supposed it was, by the deed executed to him. The complainants and the administrator of Van Buren have since discovered that Van Buren's grantors were never seized of any estate in the lands; that the turnpike corporation, at the time of executing the deed, was seized of these lands, and so continued, until its dissolution in 1840. How then can it be said that Van Buren lost the land or the title thereto, (which he never had,) by neglecting to pay the mortgage? If he had paid it, it would not have invested him or his grantors with the title. Neither lost the land or title to it, by the foreclosure and sale. Payment of the mortgage by Van Buren in

Bingham .v. Weiderwax.

his lifetime, or by his administrator after his death, could have had no other effect than to increase the amount of damages which he or his administrator would be entitled to recover of his grantors for the breach of their covenant of seisin contained in their deed to him. Van Buren's right of action for the breach of that covenant was perfect the instant the deed was executed. (*Hamilton* v. *Willson*, 4 *John.* 72 ; *McCarty* v. *Leggett*, 3 *Hill*, 134.) It did not arise or depend in any respect upon the foreclosure of the mortgage and sale under it. Nor did the foreclosure and sale in the least affect the complainants' rights or liabilities.

If Van Buren had paid the mortgages, and then he or his administrator, after his death, had brought an action for the breach of the covenant of seisin, it would not have been a good ground in equity for relief against their covenant, that he could have compelled the corporation before its dissolution to convey the title to him. He would have the right to rely on his cove-nant and take his remedy by action upon it.

Van Buren's grantors agreed with him that they were seized of the land, and it was their business to see that their covenant in that respect was kept, when they executed the deed. Equity may compel parties to execute their agreements, but has no power to make agreements for them, or to substitute one for another. And besides, it appears from the bill that the corporation even did not lose the land or its title by the foreclosure and sale under the mortgage. It had lost its title nearly or quite three years before, in 1840, by its dissolution. At that time, and for that cause, the title reverted back to its original grantor or his heirs, there being no provision in its charter or in any other statute to avert that consequence upon its dissolution. (*Angel & Ames on Corp.* 128, 129 ; 2 *Kent's Com.* 305.)

At all events the bill shows the dissolution of the corporation at the time mentioned, without showing that the title to their lands was saved in such manner as that Van Buren, or his representatives, could by any means have acquired it under the agreement and deed, even if he had paid the mortgages subse-

quently and before foreclosure; and it is not set up that he had agreed to pay, or that the holders of the mortgages were bound to receive, or would have received payment of the mortgages, or either of them, prior to the time of the dissolution of the corporation, or prior to the time of the death of Van Buren; or that he at any time knew or had notice that he could compel the corporation, or any other person, to convey to him the title to said land; or even that he knew or was informed that his grantors were not seized when they executed the deed. Therefore it seems to me that there is no ground upon which to sustain this bill, founded upon the neglect of Van Buren to pay the mortgages, or either of them.

But the chancellor held that even if the bill could not be sustained to the whole extent claimed, the demurrer was properly overruled on the ground that the complainants were entitled to relief so far as to restrict the defendant's claim upon the covenant to the amount of the purchase money actually paid by Van Buren, with interest thereon. I take it that the principle is settled, that if the complainants can avail themselves of this branch of their defence at law, and that objection is raised by the demurrer to the bill they should be left to make it in the suit at law; and the decree overruling the demurrer cannot be sustained on that ground. (*Colton* v. *Ross*, 2 *Paige*, 396, 400.) And I think it is well settled, that for the purpose of ascertaining the damages to which a plaintiff may be entitled in an action at law for the breach of the covenant of *seisin* in a deed, the true consideration, and that all or any part remains unpaid, may be shown, notwithstanding a different consideration is expressed in the deed, and although it contains an acknowledgment on the part of the grantors that it has been paid at the time of or before the execution of the deed. (*McCrea* v. *Purmont*, 16 *Wend.* 460; *Shephard* v. *Little*, 14 *John.* 210; *Morse* v *Shattuck*, 4 *N. Hamp. R.* 229; *Greenvault* v. *Davis*, 4 *Hill*, 647; *Beldon* v. *Seymour*, 8 *Conn. R.* 304; *Cowen & Hill's Notes*, 1441, 1442.)

My conclusion therefore is that the decisions of the court below are erroneous and should be reversed, and the bill dismissed with costs.

Ordered accordingly.